I hear you hear you this honorable court second judicial district is now back in session. And decent to what happily Jr. At least three. Well, Council, you're obviously ready to proceed. Are you also ready? And proceed? Council, may it please the court. My name is Daryl Dunham. I'm representing Donald Muskie Jr. I suppose I don't have to say this, but I'm here pro bono. I've gotten to know Donald because another client of mine is his cellmate. And I believe in him as an individual. And that's why I'm here. I'd like to start with the issue of the consecutive versus concurrent sentences first, because that's the one that, frankly, troubles me the most. The facts are simply that my client was convicted of a bench trial, convicted of burglary, which was a forcible felony. And then it was determined that he was in flight there from. And there was an automobile collision for which my client was criminally responsible, resulting in the death of an individual. We're not making any arguments with regard to the burglary. It's all about the sentence. And so the question is, was he guilty of first degree murder? And I'm going to address that in a moment. Well, before you address that, Mr. Dunham, did you read the entire record in this case? I thought, yes, I reviewed it thoroughly, I believe. Your client filed a pro se post-trial motion alleging ineffective assistance of trial counsel. Correct. One of the things that the trial court commented when he was listening to the defendant's complaints about his attorney, he said that Mr. Lombaro has done an outstanding job in representing you to this point. Should we place any weight on the opinion of the trial court that Mr. Lombaro provided excellent representation? I don't think you should, Your Honor. It's certainly not clear we'll stop a race judicata. Obviously, the trial court wasn't aware of the concerns that we raised. And if the trial court was aware of those concerns, you might have offered a different opinion. During the exchange between the defendant and the trial court, the trial court reminded the defendant that any statements that he made during the exchange could be used against him later on. Correct? I believe that's correct. I don't have that part memorized, but I believe that's correct, yes. The court asked several questions and warned the defendant about the consequences if he chose to speak. And that's at page 907 and 908. I believe that's correct. I do have some references. There are judicial admissions, then, in the exchange. The defendant says the chase is what caused the accident, that the police could have arrested him later. In fact, he put that in writing in his post-trial motion. He stated the arrest could have been made at a later date. Police chase enhanced the defendant's fear to flee, which resulted in the accident. That judicial admission is binding on the defendant here, isn't it? I don't believe it is, Your Honor. Why not? Because I think, one, I guess you want me to address the second issue. First of all, I'd be glad to do that, of course. I don't think there was any evidence of a timeline here, Your Honor. Why? There wasn't any evidence of a timeline. That was essentially something that I did. Now, essentially the argument was, my client testified that he went to an intervening park, that there was more than five minutes that transpired between... Your client said that he was chased the whole time. He was chased the whole time. He said that he was chased the whole time. The court said you were chased the whole time, okay, and that you were actively trying to get away at the time that the accident occurred. The defendant, yes. Why is that not a judicial admission? Your Honor, it's also stated in the record in post-trial motion that he was instructed by his lawyer to offer that testimony. And he also said in post-trial motion that that testimony was false. Right, he admitted that he lied at trial, but I'm talking about, this is post-trial. This is what he was saying post-trial. Your Honor, he could not have had effective assistance of counsel if he's making that statement because there was no evidence from the prosecution side that he was chased all the time. His lawyer advised him not to say anything. He overrode his lawyer's advice and agreed to get involved in this exchange with the trial court. I understand, Your Honor. I just think it's, sometimes the law, I admit, sometimes the law is against you. But if you went back and did a timeline and given the evidence of the prosecution, it just could not have been the case. A deliberate, clear, unequivocal statement or admission made in court or in preparation for trial by a party or a party's attorney, which concedes for the purposes of that particular trial the truth of some alleged fact personally known to the declarant, is not excluded by the hearsay rule, even though the defendant's available as a witness. He cannot retract that judicial admission. I understand, Your Honor. That's why I wanted to start with the first issue, my other issue. And here's what we have. We don't have a situation where at the trial, and we're talking about sentencing, and the court and the prosecution is under a misimpression of what the discretion is of the court to sentence. Argument has been made by prosecution that perhaps there was a duty on the part of his counsel at that time to stand up and say, wait a minute, you've got this wrong. You mean trial counsel or appellate? In fact, it's ineffective. What I'm trying to do is distinguish what happens in a particular case. Because I think in this particular case, it's very egregious. And here's why I think that. Point number one is there's no statutory duty on the part of a lawyer, certainly a defense lawyer, that I'm aware of, that requires a defense lawyer to stand up and make arguments against the best interest of his client. The authority has to come from the rules of professional responsibility. And it's our contention, and I think it's really kind of axiomatic, that if there's no rule of professional responsibility that mandates your own lawyer to stand up and make arguments or point out facts or point out laws that are adverse to your interests, then your own lawyer should shut up and sit down and not make those arguments. Counsel, what about the duty of candor to the court? Are you saying that that's overridden by the duty to the client? Your Honor, I have thought about that issue in the contents of the trial counsel. And I can really make arguments both ways. But that's not what we have here. In this case, we've got appellate counsel. The issue of consecutive sentencing or concurrent sentencing, not before the appellate court. And so we have the appellate counsel making an argument, injecting the argument in the record, raising it for the first time, and saying, my guy got too light a sentence. He needs to have another seven years. Well, the other side of that argument is that the defendant had accumulated some good time. Correct. Some additional letters, I believe, right? Written on his behalf for the new sentencing hearing. And so there is a strategy element. You're going to get a new sentencing hearing because the trial court erred in not imposing a consecutive sentence. We might have a shot at getting less time. Appellate counsel should have done the math. There's no way that the accumulated good time was going to run up to seven years. What about, you know, it was a 26-year concurrent initially, right? Correct. And as a result of the arguments of my client's own lawyer, he gets 33 years. And this was not, and so let's just think of the ramifications of this. This is the only case, I've done a lot of research on this, and this is the only case I've ever been able to find, where a party's own lawyer injects into the proceedings, into the hearing, new argument, and then as a result of injecting into that new proceeding, the new argument, his client winds up getting a more egregious result. As far as I know, this is the only case in the entire, and I've looked. So, counsel, your position is sentencing was not an issue on appeal. Well, it was on appeal, but this particular issue was not on appeal. It was... How do you open the can of worms only part way? I mean, once the issue of sentencing is raised, doesn't that trigger the duty of candor? As opposed to sentencing was just not on anyone's radar in appeal, and then completely out of the blue, counsel says, oh, by the way, I know that the trial court got this part wrong. Well, it was more than by the way. That was the argument that was made and aggressively made on appeal, where the... Right, but that's not the point. The point is sentencing was part of the appeal. The only issue on appeal was the issue that was raised by my client saying that the sentence was too excessive. That was the only argument that was raised on appeal. That was the only argument that was raised in the trial court. Now, let's just think about the ramifications of this. Here you are as a lawyer, right, and you're a good lawyer, a fine lawyer, you know the law, you search the record, and you find some issue in there that's extraneous to the issues that are being raised on appeal. Do you have a duty under the rules of professional responsibility to raise that on your own motion adverse to your client? And as a result of your advocacy, your client winds up getting an extra sanction, an extra penalty. Well, I really do submit, Your Honors, that you are on a slippery slope if you permit this to go forward. Now, what are we looking for in this case, Your Honors? I mean, it's a very, it turns out to be a very complicated case in the sense that it is true, as the appellate court, this very court found, that you on your own motion can look at the record and say this sentence is incorrect either one way or the other, and you can correct it, and there's plenty of precedent that allows you to do that. And so the question is, well, how do we know, how can we determine whether or not somebody other than Mischke's own lawyer would have found this error, and he would have wound up automatically or through some notice in hearing had the extra seven years tacked on. Well, what I do know is that under, there is precedent in other jurisdictions in that Merrick case that I cite in our opening brief has been cited I think in excess of 80 times and say at some point in time after somebody's been released an issue of substantive due process does attach. And you cannot reincarcerate the inmate upon such a showing, and I think we should have the opportunity to establish one that would not have been caught, it certainly wasn't caught by the prosecution, certainly wasn't caught by the trial judge, and so it would not have been noticed, and Mischke could have been released with good timing and the like, not at the 33-year starting point, but at a lower point in time. And I don't think the way of making a distinction is saying, well, sentencing was an issue on appeal. I think the question is, did appellate counsel knowing that the issue on appeal was a sentence was too strong, had an ethical duty to say, well, no, the sentencing was not too strong, it was too light. Now, hopefully we're not going to be talking about situations where, I see, what is it? Is my time up? Yeah. Hopefully we're not going to be making the distinction by a mistake of fact as opposed to a mistake of law. In other words, hopefully we don't have a defense counsel knowing that he's not putting his client on the stand knowing that the prosecution could convict him of a more serious crime, has an ethical duty to stand up and say, no, he could be killed for a more serious crime. That would be absurd. And so I really do think we're going to have some real problems coming up with some kind of parameters saying that a defendant's counsel has an ethical duty to stand up and shaft his client. You will have an opportunity for a reply. Counsel? Good morning. Good morning, your honors. Adam Rodriguez for the people. Good morning, counsel, and may it please the court. Defendant's appellate counsel did not render ineffective assistance when he acknowledged that under the law, defendant's sentence was required to be served mandatorily, consecutive as opposed to concurrent. In this case, defendant alleges that his appellate counsel and direct appeal was ineffective in that, acknowledging that initial erroneous sentence, to this court, defendant acted against, his counsel acted against his interests. Well, counsel's argument is that it was raised of his own accord and introduced as an issue by defense counsel. And so I think he's making a distinction between, if you're asked by the court, obviously you have a duty of candor to say what is correct. But the argument he's making is that it's different when it's raised on defense counsel's own accord. So, Justice Kennedy, in regards to that, appellate counsel's decision to acknowledge under the law this issue isn't an indication of ineffectiveness. As Justice Boquette identified, it's the product of sound strategic and ethical considerations. As to the issues of strategy, under the law, defendant's initial sentence wouldn't violate 5-5-4 of the Unified Code of Corrections as long as those initial discrete sentences didn't increase, i.e., the 26 years for the first remurder and the seven years for the ADY. Therefore, acknowledging the trial court's sentencing hearing, that defendant, a new sentencing hearing, where he was able to introduce new mitigation, make new arguments before the trial court. That's not the point. The point is, not what happened afterwards, what's the balance of the ethical obligations? My obligation to my client and my duty to be candor, to be candor to the court. There was no inquiry here as to whether the sentence was appropriately consecutive or concurrent. Are you asking that question? No. That's true, correct? There was no issue on appeal as to whether this sentence was consecutive or concurrent. Is that correct? Only in so much as counsel identified this issue and brought it up before the court. Correct. But nobody else did. It wasn't in the notice of appeal. The issue was, was the sentence excessive. Your Honor, I would disagree with the contention that there was no indication in the record. Putting aside counsel's acknowledgment of the law, when this case went up on appeal and that was an issue, the State also was aware of this. So it's not as if this issue was never going to come up, because absolutely. But it didn't. Excuse me, I'm sorry? But it didn't come up from the State. It did, Your Honor. In regards to the State's argument, it wasn't that the State just conceded or acknowledged and didn't advance any further argument. The State also identified that this issue required sentencing. And again, counsel did ask for remand because of that strategic choice to engage in a further or subsequent resentencing where he could present this new mitigation that he believed was persuasive and would get him possibly a lower sentence either on the first-degree murder charge or on the AG DUI. Counsel acknowledged that, but he says that that didn't matter because a reasonable attorney would not have done this, would have left the sentence alone. Not at all, Your Honor. I think that's fundamentally incorrect because for purposes of an effectiveness, you base it on what a reasonable attorney would do in the circumstance and present it with a situation where there is an argument to be made where the defendant could get a new sentencing hearing and possibly get a lower sentence based on the presentation of new mitigation evidence. Do you think it's reasonable that all those letters combined was going to reduce the sentence by more than 7 years? Is that a reasonable thing for counsel to have done? I think it certainly was reasonable, Judge. We look at things, we look at these circumstances not through the benefit of hindsight, but through what would be reasonable at the time. What was the minimum that the defendant could have received on the other charge? So the AG DUI was a Class II felon. He was looking at a potential sentencing range of 3 to 7 years. And obviously the first-degree murder charge had a sentencing range of 20 to 60 years. So there was an argument to be made, as counsel identified, to present this additional mitigation to the defendant's renewed religious penitent spirit and his engagement with the prison ministry. And that might have implicated or possibly led to a trial court sentencing him to something lower than the 26 years for the first-degree murder charge or less than the 7 years. Did that ultimately happen? No, because the trial court reviewed all of the information and made that determination that to lower the defendant's sentence would have depreciated the seriousness of the offense. That's not an indication of trial court sentencing error and it's certainly not an indication of counsel's ineffectiveness. In regards to the ethical considerations, as this Court has explained, the proper measure of what is an attorney's performance is not what is in the best interest of his client, but what a reasonable attorney would do under the circumstances. And what is reasonable is informed in part by the rules of professional conduct. So counsel had, in addition to a strategic obligation to present this information or to acknowledge the sentencing error to get him into the trial court for a new sentencing hearing, he also had an ethical obligation to do that as well, to fully disclose all the issues before this Court. I think counsel indicates that, he makes the argument that appellate counsel could have just stood before this Court, mute, and not have said anything. And then this issue would never have come up. Unfortunately, deceiving this Court by omission is still deception. Counsel had an ethical duty, pursuant to the rules of professional responsibility, to disclose this sentencing issue to the Court. And it obviously also had the strategic benefit to get him into the lower court, the trial court, for a new sentencing hearing. And those considerations are weighty and I think they ultimately are an indication of reasonable assistance, not ineffective assistance. Counsel does also argue that before appellate counsel's acknowledgment of this issue, the situation would never have been discovered. I think that's an unreasonable conclusion. Do we know from the record whether or not appellate counsel consulted the defendant about raising the sentencing issue? We don't judge, and as to the point about the incompleteness of the record, I think that's an issue that has to be held against the defendant. He didn't present any of this information, he didn't provide a sufficient record for this Court to fully assess these issues. Under Fouch and similar cases, that lack of specificity in the record, that insufficiency of the record, is held against the defendant. Well, the absence of the second stage hearing doesn't really matter. We have the petition, we have the Court's ruling, and our review was denominal, so why does it matter? It matters because without either the record of the transcript of the motion to dismiss hearing or the record of the transcript of the Court's oral ruling granting the people's motion to dismiss, this Court can't review those proceedings to identify any statements that are indicative of informed right at error, any concessions made by defendant, the trial court's legal reasoning as to finding or granting the State's motion to dismiss. So certainly, those are all discrete pieces of information that this Court is entitled to have, and it seems the defendant's argument really is you needn't worry about the details, but that's not how we engage in appellate litigation. Presenting this Court with the totality of all the information below, so it can make a reasoned decision based off of all the information, is how we engage in this course of conduct. Counsel also argues on the other issue, that the case should be remanded for a third stage hearing on the timeline issue, that there was a break. You didn't address the issue of judicial admission in your brief, did you? I did not, Your Honor. No. I would, in regards to that issue, bouncing over to the first issue, I would say that in regards to the substantive arguments, that the evidence most certainly rebuts, the record rebuts counsel's or defendant's assertion that this was somehow an issue that requires a third stage review. Even accepting the argument, defendant's formulation that he had gotten away, under case law, you look at, and Joan cites this, that's a case more, regarding factors that you look at to determine whether a defendant has gotten to a place of safety. And those factors are, was the defendant actively and continuously being chased by police? Was he attempting to hide from the police? And were defendant's actions such that they permitted the reasonable inference that he was aware that he had been observed at the scene of the forcible felony? In this case, even if this court were to engage with defendant's analogous argument that he had reached a place of safety and therefore the sort of purview of the felony murder rule no longer applied, the aforementioned factors support the conclusion the defendant was still in flight and had not gone to a place of safety. Indeed, as the evidence indicates, the defendant was observed by Officer Garcia exiting the target with the TV. The defendant evaded Officer Garcia's attempts to effectuate an arrest and fled at high speeds, which speaks to the reasonable inference that defendant knew he had been identified at the scene of the crime. Defendant subsequently engaged in high-speed chase with multiple officers, even careening towards one head-on that needed to evade. The defendant admitted during his testimony that he saw Officer Garcia's squad car. And later on in his statement to Detective Lopez, he admitted that from the point of leaving target up until the point of the collision, he believed that he was still being chased by police. And in fact, he identified, he testified that his goal was to meet at the rendezvous point in North Chicago. That's at 763 of the record, Volume 3. Therefore, all of the evidence regarding defendant's speed at the crash, defendant's evasion from police, defendant's own statements... Regarding his statements, why didn't you raise the issue of his judicial admissions in your brief? That was an overstatement on my part, Your Honor. Something you just missed it? Yes, I would just have to concede that. Should we consider that issue? Should we look at it? Certainly, Your Honor. I think an oversight concession on the part of State is not binding upon this Court. I think, as Your Honor identified, those are damning admissions that, you know, something would be harmed if in this argument, as he identified, you know, he acknowledged those statements as you indicated, and I think that's certainly a factor that this Court can consider in this appeal. You know, therefore, for all that evidence, Your Honor, it clearly established the defendant was still in flight at the time. He had not reached the place of safety. He still had proceeds in the car. He was looking for a rendezvous, right? Absolutely, Your Honor. So even under that hypothetical, he hadn't even reached the point which would constitute a place of safety, and he still had the proceeds, which is very... The whole circumstance of this case is analogous to the Jones decision that the people cite. There, it was a burglary. The defendants fled. There was a police pursuit. He crashed into a victim's vehicle causing substantial injuries leading to her death, and the Court found in regards to the sufficiency claim that the defendant had been found guilty of, or the evidence was insufficient found guilty of felony murder, the Court looked at the fact that there was the proceeds of the burglar in his vehicle, the fact that he had caused this crash leading to the victim's death during the pursuit, that there was DNA evidence that linked the defendant to the driver. The same situation occurs in this case where the totality of the evidence clearly identified the defendant as the driver, the proceeds of his burglary were still in the back of the car, and the crash that led to the victim's death occurred during the flight. The time evidence that the defendant claims is new evidence is not. It existed in the record. He argued it below. It's merely he was asking the Court to make a factual and credibility determination which the post-conviction Court was not allowed to make at second stage. If I could briefly conclude, Your Honor. Therefore, for the reasons argued today as well as those in our briefing motion to strike, we ask that you affirm the second stage initial of the defendant's post-conviction petition. Thank you very much. Your Honor, when I entered the case, I filed an amended post-petition. I attached Donald Mischke's affidavit. I was trying to look for it. It's there. It relates a conversation with appellate counsel in his affidavit. He flat out says, if he had been told, if he had been advised that by using this strategy there was a potential of getting an extra seven years, he would have instructed him to the extent he was able not to bring it. Second point is, we're talking about, and the argument seems to be, well, it was a reasonable strategy for appellate counsel to send the matter back to the same judge and hope for a different sentence because of something that may have happened after the original conviction. Well, to me, I don't think that's a reasonable strategy as a matter of law. But if we're going to talk about reasonableness, then that's why we need to have a third stage, isn't it? Let's get appellate counsel in front of the judge and start asking him, how did you arrive at this strategy? Why do you think this was reasonable? Why do you think this was serving the best interest and force him to answer some questions? We can't make that argument, make that ruling as a matter of law. Your argument is that it's at least arguable for a strategy. I'm pretty confident, Your Honor, that it's not going to be a very easy cross-examination for counsel as to why he made the decisions that he did. The only reasonable, it seems to me, parameter on the duty of candor has to be that the issue for which candor is required is before the court. Not the general issue, the issue. You can't put some kind of obligation on lawyers if they run into something in the record that is adverse to their client, but it's not before the court. It just makes no sense to say there's a duty of candor to somehow raise that for the first time and say, hey, I need to make an argument here that's adverse to my client. There's also ethical duties of loyalty to your client. We have to keep that in mind. And for those reasons, Your Honor, I do think we need at least estimate. You convinced me. I probably shouldn't say that. I might wind up getting turned over to the Lawyers Association, but you're right about it. With regard to that, I understand that people miss things. It happens to everybody. I was trying to remember it. It's okay. Maya Coppola, Your Honor. Thank you. We need to have a third stage in this case, Your Honor. Thank you very much. Thank you both for your arguments. We will be in recess until the next case at 1130, I believe. And we'll issue a written opinion in due time.